UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:12-CR-57-GFVT-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| ROGER D. KING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 348), the Court considers reported violations of supervised release conditions by Defendant Roger D. King. This is his third revocation.

## I.

District Judge Van Tatenhove entered Judgment against Defendant in December 2013 after Defendant pleaded guilty to one count of conspiracy to manufacture 50 grams or more of a methamphetamine mixture. D.E. 222. This was a Class A felony due to an enhancement for a prior drug felony. Defendant was sentenced to 120 months of imprisonment followed by eight years of supervised release. *Id*. at 2-3. In August 2015, Defendant's sentence was reduced to 119 months. D.E. 225.

Defendant was first released on September 11, 2020. He began outpatient substance-abuse and mental-health counseling on October 2, 2020.

In May 2021, the United States Probation Office ("USPO") informed the Court that Defendant had tested positive on an instant drug test and subsequently admitted smoking

methamphetamine.  D.E. 295.  The USPO requested no action be taken at that time, and Judge Van Tatenhove approved that request.  *Id*.  The officer noted that Defendant had been attending bimonthly outpatient substance abuse and mental counseling sessions.  The officer stated he intended to switch treatment providers to Windows of Discovery, where Defendant could have weekly sessions.  *Id*.  Defendant switched to Windows of Discovery on June 15.

On November 16, 2021, the USPO issued a report charging that (1) the probation officer had been unable to contact Defendant for some time and (2) Defendant had been terminated from his outpatient drug abuse treatment.  On December 2, 2021, an addendum further charged Defendant with (3) use of methamphetamine and (4) committing the crime of methamphetamine possession after Defendant admitted he had recently used methamphetamine.  *See* D.E. 322 at 2-4.

When Defendant appeared on the charges, the defense moved for a competency exam. Defendant was ultimately found competent and proceeded on the charges.  D.E. 314, 316. Defendant stipulated to Violations #3 and #4 (using and possessing methamphetamine), and the government moved to dismiss Violations #1 and #2.  D.E. 322.  In July 2022, Defendant was sentenced to "a term of imprisonment of twelve months and a day, followed by continuation of his existing term of supervision, set to expire September 10, 2028."  *Id*. at 9; D.E. 324.

Defendant was released again on October 8, 2022.

On January 11, 2023, the USPO issued a report charging two violations.  It said that on January 4, Defendant submitted a urine specimen that tested positive for methamphetamine upon instant testing.  He denied any recent drug use.  Because the specimen appeared too small for lab testing, Defendant was told to remain at the office until he was able to provide a larger specimen. However, he left the courthouse.  On January 11, he was terminated from outpatient substance

2

abuse and mental health counseling at Cumberland River Behavioral Health, in McKee, Kentucky, after failing to attend treatment sessions as instructed.

At the final hearing on March 10, 2023, the Court found that Defendant had violated the condition that required submission to drug testing as directed and the condition that required compliance with treatment for drug addiction and mental health as directed. Following allocution to the District Judge (D.E. 334), Defendant's release was revoked, and he was sentenced to ten months of imprisonment followed by one year of supervision. D.E. 332 (R&R); D.E. 335.

Defendant was released again on January 3, 2024.

## II.

On February 9, 2024, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. This is the fourth set of violations reported to the Court. The Report charges three violations. According to the Report,

> On January 3, 2024, King was released from the Laurel County Detention Center in London, Kentucky to begin his current term of supervision. King did not call or report to the probation office within seventy-two hours of his release.

> On January 9, 2024, the undersigned discovered King had been immediately released on January 3, 2024, and had not contacted the United States Probation Office. The undersigned called a previously used landline phone by King. King's mother, Lula May King, answered and advised King was not currently at home, but confirmed he did live there. This officer relayed that King needed to report to the probation office and provided her with the undersigned's contact information. Ms. King advised she would relay my information and request King to call me back once he returned home. King failed to call or to report.

> On January 30, 2024, a certified letter to report was sent to King, advising him to report to the United States Probation Office in London, Kentucky.

> On February 8, 2024, the certified letter to report was returned undeliverable. The undersigned conducted a home visit and contacted King at his

prior residence.  King was instructed to report to the probation office on February 9, 2024.

On February 9, 2024, King reported as directed, and produced a urine sample which returned positive results for the presence of methamphetamine/amphetamine.  King signed a positive drug test admission report for the use of methamphetamine on or about February 6, 2024.

Violation #1 alleges a Grade C violation of the condition that required Defendant to report to the Probation Office within 72 hours of his release.

Based on Defendant's signed admission to using meth, Violation #2 alleges a Grade C violation of the condition that prohibits unlawful use of a controlled substance.

Violation #3 charges a violation of the condition that Defendant must not commit another federal, state, or local crime and the condition that he not unlawfully possess a controlled substance.  Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

The Court conducted an initial appearance pursuant to Rule 32.1 on March 1, 2024, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing.  D.E. 347.  At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release.  Based on the heavy defense burden under 18 U.S.C. § 3143(a), Defendant was remanded to the custody of the United States Marshal.  *Id.*

At the final hearing on March 18, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583.  D.E. 349.  Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations.  *Id.*  He admitted he had used meth and he said he kept forgetting to report to Probation.  He admitted his mother had told him the probation officer

4

was asking him to report.  For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report.  The United States thus established Violations #1-3 under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District.  Additionally, the Court has considered all the section 3553 factors imported into the section-3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.  Defendant pleaded guilty to conspiracy to manufacture methamphetamine, which was a Class A felony due to the drug quantity and his prior drug-felony conviction.  *See* 21 U.S.C. §§ 851, 846.  A Class A conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007).  Under section 7B1.1, Defendant's admitted conduct would qualify as Grade C for Violations #1 and #2 and a Grade B violation for Violation #3.  Given Defendant's criminal history category of IV (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is twelve to eighteen months.  USSG § 7B1.4(a).

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug-manufacturing conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

## IV.

At the final hearing, the government argued for revocation with a top-of-the-Guidelines imprisonment term of eighteen months with no additional supervised release to follow. The defense agreed that no further supervision was warranted but asked for a sentence below the Guidelines maximum.

The government stressed that the trust breach here is severe. These proceedings follow the 12A for meth use in 2021, the revocation for meth use in 2022, and the revocation involving a failed drug screen in 2023. Defendant's meth problem continues unabated. He also remains difficult to supervise. Here, Defendant did not report until a month after release, rather than the required three days. The government says Defendant has a blatant disrespect for the law and cannot be deterred from using meth. In 2023, he asked for more help with his drug addiction, which resulted in the recommendation of additional supervision. According to the government, he has now "thumbed his nose" at that opportunity for more treatment accompanying supervision. The government did acknowledge that the underlying behavior of meth production is no longer a concern. According to the government, a max-Guidelines sentence with no further supervision is "all that makes sense" at this point.

According to the defense, Defendant still wants help for his drug addiction. Yet he does not do well on supervision. The defense therefore requested that Defendant be taken off paper and given a sentence below eighteen months.

Defendant addressed the Court. He explained he has been rebellious his whole life and having a law enforcement officer "on his back" sets him off. Nevertheless, at 61 years old, he is not the same man he was when originally arrested. He emphasized that he has never been charged with drug trafficking. He said he had made meth at home to be used by himself and his girlfriend. He asked to be placed in a BOP facility rather than the Laurel County Correctional Center.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

In 2023, the Court remarked that little had changed since the 2022 revocation. The same continues to hold true. Defendant is difficult to supervise and keeps on using meth. This year,

7

the penalty range is more severe because Defendant was charged with a Grade B violation for committing the crime of illegal drug possession. And the trust breach is exacerbated because this is now Defendant's fourth reported set of violation conduct.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, after a meth lab was busted, law enforcement began combing pharmacy logs to identify the operation's smurfs. Defendant was among those who had been making excessive purchases of pseudoephedrine. Defendant had been traveling to pharmacies in London, Berea, Richmond, and Lexington, to obtain pseudoephedrine and other meth precursors to resell or to "cook" into meth himself. Defendant himself had been using meth for fourteen years. He insists now that he was not a trafficker. Although hardly anyone cooks their own meth anymore, Defendant continues to be a user. This raises the possibility he could resort to crime to support his habit.

The Court next considers Defendant's history and characteristics. Defendant has a prior drug felony conviction. His psychological evaluation revealed antisocial personality disorder. This is his third revocation. As he admitted, he has problems with authority figures. Defendant's history here counsels strongly in favor of terminating supervision.

The Court also considers the need to deter criminal conduct and protect the public. Defendant poses a potential danger due to his drug addiction that fueled past criminal conduct. A significant penalty is necessary to provide deterrence and protection.

Another factor focuses on opportunities for education and treatment. Defendant has received some drug-abuse and psychological treatment before. Defendant was in the process of being evaluated for treatment at the time of his 2023 violations. He would have been evaluated

8

for treatment again if he had reported to Probation upon release as ordered. Defendant did not avail himself of this opportunity, so understandably neither side requested additional treatment.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Given this is a third revocation, the penalty naturally should ratchet up from the prior revocations. A sentence at the top of the Guidelines is well supported by the record.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

The length of Defendant's sentence means that he will likely be transferred to the BOP.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1.      That Defendant be found guilty of all three violations.

2.      Revocation with a term of imprisonment of eighteen months, with no additional supervision to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for

consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 19th day of March, 2024.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**

10